**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MARK A. WEAKLEY,** | ) | |
| | ) | |
| **Plaintiff.** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:12-cv-1180** |
| | ) | |
| **NASHVILLE MACHINE ELEVATOR** | ) | **JUDGE TRAUGER** |
| **COMPANY, INC.** | ) | **MAGISTRATE JUDGE GRIFFIN** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, Nashville Machine Elevator Company, Inc. ("Nashville Machine"), provides this Memorandum of Law in support of its Motion for Summary Judgment. For the reasons discussed herein, Nashville Machine respectfully submits that its Motion for Summary Judgment should be granted and Plaintiff Mark A. Weakley's ("Mr. Weakley") claims[1] against it should be dismissed.

### I. SUMMARY OF ARGUMENT

In this lawsuit, Mr. Weakley is asserting claims for retaliation and retaliatory harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* [*See* Complaint ("Compl."), Dkt. No. 1]. Mr. Weakley's claims should be dismissed because they are all time-

---

[1] While Mr. Weakley's Complaint appeared on its face to assert a claim for discrimination under the Civil Rights Act of 1991 and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.*, Plaintiff's counsel stipulated during Mr. Weakley's deposition as follows:

> Counsel is referencing Plaintiff's Complaint in this action about certain language contained in the Complaint referencing that Plaintiff's case is based on potentially a race or national origin discrimination or discrimination in general under Title VII. Plaintiff's case is a retaliation case and [retaliatory] harassment case under the same. There are no factual allegations based on race or national origin.

[Deposition of Mark Weakley ("Weakley Dep.") at 57:5-13; *see* Compl., Count I - Civil Rights Act of 1991 (basis of Count I is knowing and intentional pattern of discrimination) and Count III - THRA (basis of Count III is intentional pattern of discrimination based upon his race/national origin). *See also infra*, discussion of retaliation claims beginning on page 15]. It is clear from this quoted language and counsel's related communications that Plaintiff is asserting only Title VII retaliation claims (including retaliatory harassment), and that Plaintiff is not asserting a THRA claim, which would nonetheless be time-barred.

1

barred. Further, even if Mr. Weakley's claims were not time-barred, his claims should be dismissed because he is unable to prove that Nashville Machine retaliated against him or that alleged retaliatory animus by Nashville Machine was the "but-for" cause of the challenged employment actions.

## II.    FACTUAL BACKGROUND

### A.    Mr. Weakley's Employment with Nashville Machine as an Elevator Mechanic

Mr. Weakley began his employment with Nashville Machine in 1986. [Weakley Dep. at 12:18-19; Compl. ¶ 8]. He was hired as an Apprentice, or Helper, responsible for assisting Elevator Mechanics with elevator installation. [Weakley Dep. at 12:20-13:1; Compl. ¶ 9]. He later became an Elevator Mechanic responsible for installing the elevators. [Weakley Dep. at 14:3-14; *see* Compl. ¶ 10]. On a typical elevator installation job, there is one Mechanic and one Helper. [Weakley Dep. at 14:18-20, 15:2-5; Deposition of Samuel Chitty ("Chitty Dep.") at 28:12-23]. The Mechanic is responsible for the elevator installation job as well as for any damage or mistakes that occur during the install. [Weakley Dep. at 15:9-13, 38:23-25; Chitty Dep. at 29:12-30:2, 84:15-19].

### B.  Mr. Weakley is a Member of The International Union of Elevator Constructors

During his tenure with Nashville Machine, Mr. Weakley was a member of the International Union of Elevator Constructors (the "Union"), and subject to the Union's collective bargaining agreement with Nashville Machine. [Weakley Dep. at 15:14-23; Compl. ¶ 11]. As a member of the Union, Mr. Weakley's business agent is Tim Shultz. [Weakley Dep. at 16:8-12]. Mr. Shultz assists union members with concerns/grievances related to their employment. [Weakley Dep. at 16:13-18, 17:5-8].

### C. Nashville Machine's Process of Laying off and Re-hiring Mechanics During Economic Downturns

In the elevator installation industry, there are periods of economic and seasonal downturn when labor needs are low. [Chitty Dep. at 21:17-24; Weakley Dep. at 17:15-19]. During these downturns, Nashville Machine may lay off some of its Mechanics [Chitty Dep. at 21:15-22:6; Weakley Dep. at 17:15-19]. Once business picks back up and Nashville Machine requires additional labor, the Union submits a list of Mechanics to Nashville Machine that are available for re-hire. [Chitty Dep. at 22:14-16; Weakley Dep. at 17:24-18:1]. Sam Chitty, who is Nashville Machine's General Manager, has discretion when re-hiring Mechanics from the Union's list. [Chitty Dep. at 5:14-15; 23:2-3]. Mr. Chitty evaluates productivity, skill, and experience when choosing which Mechanics to re-hire. [Chitty Dep. at 22:14-23:1]. Over the course of his employment, Nashville Machine periodically laid off Mr. Weakley as its labor demands required. [Weakley Dep. at 17:20-18:1].

### D. Mr. Weakley Was Not Employed By Nashville Machine During His Testimony in the Cervantes Lawsuit

In October 2009, an employee of Nashville Machine named Robert Cervantes filed a lawsuit against the Company for alleged discrimination under Title VII ("Cervantes lawsuit"). [Compl. at ¶ 14; *see* Weakley Dep. at 58:21-23]. Mr. Weakley gave a deposition in the Cervantes lawsuit on October 14, 2010, and he later testified at the trial in May 2011. [Weakley Dep. at 62:13-16, 64:4-13; Compl. at ¶ 16]. At the time of his testimony, Mr. Weakley was not an employee of Nashville Machine, having been laid off during an economic downturn on May 23, 2010. [Weakley Dep. at 19:13-16. 62:17-20, 64:4-13; Exhibit 1 to Weakley Dep., question 8]. Mr. Weakley was employed by Kone at the time of his deposition testimony and was employed by Schindler at the time of his trial testimony. [Weakley Dep. at 64:1-3; Exhibit 1 to

3

Weakley Dep., question 8].  Mr. Weakley was laid off by Schindler on June 29, 2011.  [Weakley

Dep. at 64:14-18].

### E. Nashville Machine Re-hired Mr. Weakley After His Testimony in the Cervantes Lawsuit

On July 12, 2011, two months after his testimony in the Cervantes lawsuit, Nashville

Machine re-hired Mr. Weakley.  [Weakley Dep. at 64:19-24].  During his deposition, Mr.

Weakley acknowledged that Nashville Machine re-hired him <u>after</u> his testimony in the Cervantes

lawsuit:

> Q.     So, let me make sure I understand this.  Nashville Machine hired you back
> to work after you gave a deposition for Bobby Cervante[s] and after your
> testimony in the Bobby Cervante[s] case?
>
> A.     Yes.

[Weakley Dep. at 65:3-7].

At the time when Mr. Weakley was re-hired, there were at least two other eligible

mechanics on the Union's list that Nashville Machine could have re-hired instead of Mr.

Weakley.  [Chitty Dep. at 136:6-137:10; *see* Weakley 66:10-14, 67:25-68:3].  Mr. Chitty

described the process of choosing Mr. Weakley instead of the other Mechanics, Wayne Hart and

Zach Escobedo, as follows:

> Wayne Hart was a -- he's just an employee that has a hard time doing anything.
> He's -- best way to describe it, I see him having a hard time even getting his shoes
> tied.  So he would have been a last choice.  It was a toss up between Mark
> Weakley and Zack Escobedo.  Their skill and ability levels were about the same.
> And we just decided to bring Mark back.

[Chitty Dep. at 137:7-10; Exhibit 10 to Chitty Dep., numbered NMEC 0136].  Mr. Weakley was

the only Mechanic that Nashville Machine brought back to work July 12, 2011.  [Chitty Dep. at

137:11-13].[2]

---

[2] Mr. Weakley admits that Mike Mehan, who also testified on behalf of Bobby Cervantes, was also rehired by Nashville Machine following his testimony. [Weakley Dep. at 79:4-6, *see* 75:9-17].

4

### F. Mr. Weakley's Disciplinary Actions and Termination

> **i.** On August 5, 2011, Mr. Weakley was placed on probation after he misaligned an elevator door frame and failed to report it to his supervisor

On August 5, 2011, Nashville Machine placed Mr. Weakley on a six month probation after he failed to install an elevator door frame properly on an installation job at the First Baptist Church in Inglewood, Tennessee. [Weakly Dep. at 22:2-8; Exhibit 4 to Weakley Dep.; Chitty Dep. at 78:12-22]. Specifically, the elevator door frame that Mr. Weakley installed was misaligned (*i.e.* the elevator car was not in line with the elevator door frame), and the door frame was blocked. [Weakley 24:12-14; Chitty Dep. at 94:15-22, 96:12-16]. As a result, Nashville Machine paid to remove the blocks and realign the elevator door frame. [Chitty Dep. at 96:12-16; Declaration of Samuel Chitty ("Chitty Decl.") ¶ 12]. Mr. Weakley admits that the elevator door frame he installed was misaligned. [Weakley Dep. at 24:12-14]. Mr. Weakley also understood that the incident cost Nashville Machine money. [Weakley 25:12-14].

Additionally, Mr. Weakley failed to notify his supervisor that the elevator door frame was misaligned so the problem could be corrected. [Chitty Dep. at 78:13-22; Exhibit 4 to Weakley Dep.; Chitty Decl. ¶ 11, *see* ¶ 13]. Mr. Weakley claims that he was not aware of the misalignment. [Weakley Dep. at 26:3-5]. Mr. Chitty testified that even the greenest mechanic would be able to look at the elevator doors and see that they do not line up with the elevator car. [Chitty Dep. at 96:5-8; *see also* Chitty Decl. ¶ 10]. Further, Mr. Chitty was informed by Mr. Weakley's Helper, David Cruz, that Mr. Weakley was aware of the misalignment. [Chitty Dep. at 139:11-13, Chitty Decl. ¶¶ 7, 8]. Specifically, Mr. Cruz stated that he pointed out the misalignment to Mr. Weakley, who chose to continue on with the construction. [Chitty Dep. at 78:12-23; Chitty Decl. ¶ 8]. Accordingly, Mr. Chitty believed at the time, and continues to

5

believe, that Mr. Weakley knew about the misalignment and failed to notify Nashville Machine. [Chitty Decl. ¶ 9].

Mr. Weakley met with Mr. Chitty and his Union business agent, Tim Shultz, to discuss his performance on the Inglewood project. [Weakley Dep. at 22:9-17]. During the meeting, Mr. Weakley was notified that he was being placed on probation, and that his employment would be terminated if there were any other issues with his job performance during his probationary period. [Weakley Dep. at 22:25-23:2, 30:25-31:3; *see* Exhibit 4 to Weakley Dep.]. Mr. Weakley also received a formal write-up of the disciplinary action. [Weakley Dep. at 24:15-20; Exhibit 4 to Weakley Dep.]. The disciplinary action prepared by Mr. Chitty expressly stated: "Do not hesitate to contact me if you have any questions or concerns." [Weakley Dep. at 24:15-20; Exhibit 4 to Weakley Dep.]. Mr. Weakley did not voice any questions or concerns to Mr. Chitty following his receipt of the disciplinary action. [Weakley Dep. at 31:8-11, 31:17-21]. Mr. Weakley also chose not file a grievance with the Union following his disciplinary action. [Weakley Dep. at 32:1-3].

### ii. During his probation, Mr. Weakley installed a damaged elevator door frame and again failed to report it to his supervisor

On September 23, 2011, Mr. Chitty was informed that Mr. Weakley installed a damaged custom elevator door frame at a Veterans' Affairs Hospital in Murfreesboro, Tennessee. [Chitty Dep. at 78:23-79:4; Exhibit 5 to Weakley Dep.; Chitty Decl. ¶ 14]. Once again, Mr. Weakley failed to report the damage to his supervisor. [Chitty Dep. at 81:13-12; Weakley Dep. at 38:2-8; Chitty Decl. ¶ 15]. As a result of this incident, Nashville Machine incurred a $1,300 cost to build a stainless steel frame to cover the damaged frame. [Chitty Dep. at 85:2-6, 86:22-87:14; *see* Exhibit 5 to Weakley Dep.; Chitty Decl. ¶ 18]. Mr. Weakley admits that elevator door frame was damaged. [Weakley Dep. at 38:5-15]. In fact, Mr. Weakley admits that the elevator door

6

frame was dropped twice during installation. [Weakley Dep. at 35:21-25; *see* Chitty Decl. ¶ 16].[3] Mr. Weakley further acknowledges that the damage would cost money to repair. [Weakley Dep. at 40:24-25]. However, Mr. Weakley once again denies that he was aware of the damage. [Weakley Dep. at 37:5-8].[4] Mr. Chitty believed at the time, and continues to believe, that Mr. Weakley knew there was damage to the elevator door frame when it was installed because the General Contractor told Mr. Chitty that he brought the additional damage to Mr. Weakley's attention. [Chitty Dep. at 138:8-15, Chitty Decl. ¶ 17].

### iii. Mr. Weakley's employment was terminated for violating the terms of his probation

Mr. Weakley's employment was terminated on September 23, 2011 for violating the terms of his probation. [Exhibit 5 to Weakley Dep.; Chitty Decl. ¶¶ 4, 19]. Regarding his decision to terminate Mr. Weakley's employment, Mr. Chitty testified:

> No. Mr. Weakley was obviously operating in a way that was impacting the finances of the company, and I had to do something to stop the hemorrhaging of money that he was causing the company. I had given him opportunity and told him -- you know, given him a time period to correct his wrongdoings. And just shortly thereafter, a few weeks after, he made another mistake and failed to report it to the company, where we could have had time to correct -- you know, correct the situation before the impact became too large.

[Chitty Dep. at 133:17-134:2]. Mr. Weakley met with Mr. Chitty on September 23, 2011 to discuss his termination. [Weakley Dep. at 32:13-18]. During the meeting, Mr. Chitty explained to him that he was responsible for the damage to the door frame because he was the Mechanic on the job. [Weakley Dep. at 60:23-61:6]. Once again, Mr. Weakley chose not to file a Union grievance. [Weakley Dep. at 41:24-42:1].

---

[3] Mr. Weakley claims that his Helper, David Cruz, dropped the door frame. [Weakley Dep. at 35:19-25; *but see* 38:23-25, 60:23-61:6].

[4] Mr. Weakley claims that he repaired damage on the top of the door frame, but that he did not see the additional damage to the bottom or middle of the door frame. [Weakley Dep. at 36:4-7, 36:25-38:15].

7

### G.  Mr. Weakley Files A Complaint Based On Retaliation With EEOC

On November 16, 2011, Mr. Weakley's Attorney, Andy Allman, sent a letter to the EEOC enclosing Mr. Weakley's completed Intake Questionnaire and advising the EEOC that his firm represents Mr. Weakley in his claims against Nashville Machine.  [Exhibit 1 to Motion]. Mr. Allman's letter requested that any further correspondence or documentation as it relates to the EEOC investigation be forwarded to his office.  [Exhibit 1 to Motion].  On January 14, 2012, Mr. Weakley signed his complaint with the EEOC alleging that Nashville Machine retaliated against him because of his testimony in the Robert Cervantes case.  [Weakley Dep. at 44:21-24, 46:2-10; Exhibit 7 to Weakley Dep.].

### H.  Mr. Weakley Fails to File Suit Within 90 Days Limitations Period

Following its investigation, the EEOC issued Mr. Weakley a Dismissal and Notice of Rights letter ("right-to-sue letter").  [Exhibit 8  to Weakley Dep.].  The right-to-sue letter was mailed on August 8, 2012. [Exhibit 8 to Weakley Dep.].  During his deposition, Mr. Weakley testified that he did not receive or he does not recall receiving the right-to-sue letter.  [Weakley Dep. at 47:23-24, 48:13-15].  Mr. Weakley admits that the right-to-sue letter was addressed to him.  [Weakley Dep. at 47:15-22, *see also* 7:24-25; Exhibit 8 to Weakley Dep.].  Mr. Weakley testified that it takes mail two to three days at the longest to go from Nashville, Tennessee to White House, Tennessee.  [Weakley Dep. at 55:14-17].  Mr. Weakley further admits that his wife checks the mail every day.  [Weakley Dep. at 48:21-49:3].  Mr. Weakley does not recall being on vacation in August 2012.  [Weakley Dep. at 49:4-6].

During Defense counsel's questioning of Mr. Weakley regarding the receipt of correspondence from the EEOC, Mr. Weakley's counsel interjected as follows:

> Let me object and clarify that the letter is addressed to his counsel and so was the Dismissal and Notice of Rights to sue letter, was a courtesy copy to counsel, as well too.  So, in the sense that the confusion may be was because counsel was

N MMS01 985295 v2
2900853-000038  10/21/2013

acting on his behalf, and Mr. Weakley may not have knowledge of what was going on based on the advice of counsel.

[Weakley Dep. at 53:16-23; Exhibit 8 to Weakley Dep.].

### I. Mr. Weakley Is Unable To Identify Any Similarly Situated Employees To Support His Claims

Mr. Weakley alleges that he was retaliated against and harassed in light of his testimony in the Robert Cervantes lawsuit. [Weakley Dep. at 58:15-17, 58:21-23, 60:6-18]. Mr. Weakley asserts that Nashville Machine's retaliatory / harassing acts were his disciplinary action in August 2011 and his termination in September 2011. [Weakley Dep. at 59:6-9, 60:6-18, 61:7-12]. Mr. Weakley admits that he has never seen any documents or written statements that would indicate Nashville Machine was retaliating against him because of his testimony in the Cervantes lawsuit. [Weakley Dep. at 68:4-10]. Further, Mr. Weakley admits that he never reported to Nashville Machine that he felt his disciplinary action in August 2011 or his termination in September 2011 constituted harassment. [Weakley Dep. at 59:18-25].[5]

Instead, in support of his claim for retaliation and retaliatory harassment, Mr. Weakley alleges that other employees have made mistakes, and based on his knowledge, they have not been written up or terminated. [Weakley Dep. at 58:3-11]. These alleged comparators were identified by Mr. Weakley in his written discovery responses. [Weakley Dep. at 68:15-69:3; Exhibit 1 to Weakley Dep., number 4].

When questioned concerning these alleged comparators, Mr. Weakley admits that he did not witness any of the alleged conduct listed, except for the alleged incident related to Robert McMurray. [Weakley Dep. at 69:4-19]. Mr. Weakley conceded that his allegation, which is that Mr. McMurray stole and sold scrap off the Life & Casualty Tower when it was being built, is

---

[5] Mr. Weakley received and read a copy of Nashville Machine's Harassment Policy. [Weakley Dep. at 20:2-14, 21:19-21; Exhibit 2 to Weakley Dep.]. Mr. Weakley was aware that the Harassment Policy required him to notify Nashville Machine if he was being harassed or if he felt as though he was being harassed. [Weakley Dep. at 50:15-19].

9

inaccurate. [Weakley Dep. at 69:19-23; Deposition of Robert McMurray ("McMurray Dep.") at 13:16-22]. Instead, Mr. Weakley testified that the allegation concerns the remodeling of the Life & Casualty Tower that occurred at least 15 years ago. [Weakley Dep. at 70:2-9]. Mr. Weakley's allegation, even with the mistake corrected, is still inaccurate, as Mr. McMurray did not "steal" copper scrap off the job site. [McMurray Dep. at 15:3-16]. Rather, the [Vice] President of Nashville Machine, David Crews, gave the copper scrap to employee Melvin Smalley. [McMurray Dep. at 15:9-16]. Additionally, Nashville Machine did not have a policy on what should be done with scrap material at the time. [McMurray Dep. at 18:13-23].

Beyond his false allegation against Mr. McMurray, Mr. Weakley also admits that other portions of his discovery response regarding allegedly comparable conduct also contain inaccuracies. [*See* Weakley Dep. at 79:23-80:1, 80:15-16, 81:21-23]. Mr. Weakley further admits that he did not proofread his discovery responses very carefully when they were being prepared. [Weakley Dep. at 80:2-4]. In fact, several of Mr. Weakley's former colleagues at Nashville Machine filed Union grievances against him for the false allegations contained in his discovery response. [Weakley Dep. at 79:12-19].[6] When asked if any of the other allegations against the individuals listed might be inaccurate, Mr. Weakley responded, "[i]t's a possibility that it may have not have been worded exactly word for word." [Weakley Dep. at 82:19-20].

Mr. Weakley has not identified any employee who misaligned an elevator door frame and failed to notify their supervisor. [Weakley Dep. at 73:15-22; *see* Exhibit 1 to Weakley Dep., number 4]. Likewise, Mr. Weakley has not identified any individual who was on probation, and who damaged an elevator during the probation, but was not terminated. [Weakley Dep. at 74:25-75:5; *see* Exhibit 1 to Weakley Dep., number 4]. Mr. Weakley even acknowledged during his

---

[6] The Local Executive Board of the Union found Mr. Weakley guilty of making sworn statements against other union members for which he had no proof. [Weakley Dep. at 83:1-4, 83:5-84:22; Exhibit 9 to Weakley Dep.]. As a result, Mr. Weakley was fined. [Exhibit 9 to Weakley Dep.].

N MMS01 985295 v2
2900853-000038  10/21/13

deposition that he would not know whether or not an employee was on probation. [Weakley Dep. at 74:8-9]. Additionally, Mr. Weakley admits that he has no personal knowledge as to whether the listed individuals received disciplinary actions for their alleged conduct. [Weakley Dep. at 72:15-23]. Mr. Weakley further admits that none of the alleged conduct occurred after the Cervantes trial. [Weakley Dep. at 75:7-10].

The only employees identified by Mr. Weakley whose alleged conduct dealt with elevator door frames are Alan Hazelwood and Clint Shanes. [Exhibit 1 to Weakley Dep., number 4]. Mr. Weakley alleges that Mr. Hazelwood "blocked in all door frames in the wrong position" on the condo project in West End, and that Nashville Machine had to pay overtime for the frames to be torn out on the weekend. [Exhibit 1 to Weakley Dep., number 4]. Mr. Weakley was not even present on that job, and his allegations are incorrect. [Weakley Dep. at 69:12-23, 84:5-10; Chitty Decl. ¶ 20]. On the occasion in question, Mr. Hazelwood was working with an elevator that had an offset that neither Mr. Hazelwood nor Nashville Machine had worked with previously. [Chitty Decl. ¶ 22; *see also* Chitty Dep. at 135:17-23]. As a result, some of Mr. Hazelwood's elevator door frames were set in the wrong position. [Chitty Decl. ¶ 23; *see also* Chitty Dep. at 135:17-23]. Mr. Hazelwood noticed the offset in the field and notified his supervisor. [Chitty Dep. at 135:17-136:5; Chitty Decl. ¶ 24]. The misalignment was corrected before the rest of the door frames were set. [Chitty Dep. at 135:17-136:5; Chitty Decl. ¶ 25]. Mr. Chitty was not the General Manager at Nashville Machine when this incident occurred. [Chitty Dep. at 71:14-16; Chitty Decl. ¶ 21].

Mr. Weakley's allegation that Clint Shanes "set all the frames wrong at Nissan and had to remove frames at a high cost to the company" is also incorrect. [Exhibit 1 to Weakley Dep., number 4; Chitty Decl. ¶ 26]. Mr. Chitty was the Project Manager on the Nissan project and oversaw the elevator installation. [Chitty Decl. ¶ 27]. There were no issues with the door frame

11

installation on the Nissan project. [Chitty Decl. ¶ 28]. Mr. Weakley was not present during this installation. [Weakley Dep. at 69:12-23; Chitty Decl. ¶ 29].

## III.    LEGAL ANALYSIS

### A.  Mr. Weakley's Claims Are Time-Barred

#### 1.  Mr. Weakley failed to file his Complaint within 90 days of receiving his right-to-sue letter from the EEOC

Mr. Weakley failed to file his Complaint within 90 days of receiving his right-to-sue letter from the EEOC. Accordingly, Mr. Weakley's claims are time-barred and should be dismissed. A claimant must possess a right-to-sue letter from the EEOC in order to pursue an action under Title VII. 42 U.S.C. § 2000e-5(f)(1); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). The claimant is required to file suit within ninety days from the date of notice of the right to sue. *Id.* The Sixth Circuit is "not inclined toward an inflexible rule requiring actual receipt of notice by a claimant before the time period begins to run." *Hunter v. Stephenson Roofing Co.*, 790 F.2d 472, 474 (6th Cir. 1986). Thus, the 90 day period begins to run five days after the date on which the EEOC mails the right-to-sue letter to the claimant's address of record. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000) ("The federal courts have strictly enforced Title VII's ninety-day statutory limit.").

Mr. Weakley's right-to-sue letter was mailed to him by the EEOC on August 8, 2012. [Exhibit 8 to Weakley Dep.]. Under the standard recognized by the Sixth Circuit, the presumed delivery date to Mr. Weakley was August 13, 2012, five days after the letter was mailed. Consequently, the absolute last date for timely filing of the instant action was November 11, 2012, ninety days after the presumed delivery to Mr. Weakley. Mr. Weakley's Complaint was

N MMS01 985295 v2
2900853-000038  10/21/2013

not filed until November 13, 2012.  Thus, Mr. Weakley's claims are time-barred and should be dismissed.

### 2. Mr. Weakley has not offered any proof that he did not receive his right-to-sue letter within five days of it being mailed

Additionally, Mr. Weakley has presented absolutely no proof to overcome the presumption that he received his right-to-sue letter on August 13, 2012.  The Sixth Circuit recognizes a rebuttable presumption that mail is received by the person to whom it is addressed and that the 90 day limit for Title VII claims commences five days after the right-to-sue letter is mailed.  *Rucker v. Potter*, 215 Fed. Appx. 406, 408 (6th Cir. 2007) (upholding motion to dismiss plaintiff's Title VII claims and invoking the presumption of receipt within five days of mailing absent ***convincing*** denial of receipt); *Cook v. Providence Hosp.*, 820 F2d 176, 179 n. 3 (6th Cir. 1987) (same holding).  In order to rebut the presumption of actual delivery, plaintiff must set forth proof that he did not receive actual notice within the five day period.  *Rucker*, 215 Fed. Appx. at 408.

Mr. Weakley has offered no proof, let alone convincing proof, to rebut the presumption that he received his right-to-sue letter within five days of it being mailed to him on August 8, 2012.  Mr. Weakley admitted in his deposition that the letter was properly addressed to him and that mail takes two to three days, at the longest, to arrive from Nashville, Tennessee.  [Weakley Dep. at 47:15-22, 55:14-17, *see also* 7:24-25; Exhibit 8 to Weakley Dep.].  Mr. Weakley also acknowledged that his wife typically checks the mail every day.  [Weakley Dep. at 49:7-21].  Mr. Weakley's vague and unsubstantiated testimony that he did not receive the letter or that he does not recall receiving the letter is insufficient to rebut the presumption of actual delivery and receipt of notice five days after it was mailed.  *See Cook* 820 F.2d at 179 (affirming defendant's motion to dismiss where plaintiff only offered unsubstantiated testimony that she never received

13

the right-to-sue letter); *Gordon v. England*, No. 07-2223-STA-tmp, 2012 WL 2790375, *8 (W.D. Tenn. July 9, 2012) (granting defendant's motion to dismiss and stating "[p]laintiff's testimony that she cannot recall whether she received the notice, even when viewed in the light most favorable to her, has not rebutted the presumption of actual delivery and receipt of the notice."); *Carter v. Jack Daniel's Distillery*, 4:02–CV–001, 2002 WL 32059015 (E.D. Tenn. Nov. 26, 2002) (plaintiff's unsubstantiated, self-serving affidavit failed to rebut the five day presumption rule and raise genuine issue of material fact precluding the entry of summary judgment).

### 3. Mr. Weakley was on constructive notice of the filing requirement because his right-to-sue letter was received by his attorney

Further, Mr. Weakley was on constructive notice of the filing requirement because his right-to-sue letter was received by his attorney, Mr. Allman. The Sixth Circuit recognizes that counsel's receipt of an agency decision containing a right-to-sue notice constitutes plaintiff's constructive knowledge of the filing requirement. *Weigel v. Baptist Hospital of East Tennessee*, 302 F.2d 367, 376 (6th Cir. 2002) (affirming the motion for summary judgment and stating, "[c]onstructive knowledge of a time limit will usually be imputed when the plaintiff retains an attorney within the limitations period."); *Fort v. Ohio Department of Rehabilitation and Corrections*, 22 Fed. Appx. 494, 496 (6th Cir. 2001) (affirming the motion for summary judgment and stating, "[plaintiff] was represented by an attorney and can therefore be deemed to have constructive knowledge" of the ninety-day filing requirement).

Mr. Weakley retained Mr. Allman as his counsel long before filing his claim with the EEOC. [Exhibit 1 to Motion]. Indeed, Mr. Allman contacted the EEOC on November 16, 2011, nine months before the EEOC mailed the right-to-sue letter, and requested that all correspondence related to Mr. Weakley's case be forwarded to his office. [Exhibit 1 to Motion]. Additionally, Mr. Weakley's counsel stated on the record during Mr. Weakley's deposition that

14

the right-to-sue letter was addressed to his counsel and that counsel was acting on his behalf. [Weakley Dep. at 53:16-23; Exhibit 8 to Weakley Dep.]. It is without doubt that Mr. Weakley was on constructive notice of the ninety-day filing requirement and failed to timely file his Complaint.

Based on these facts, it is clear as a matter of law, Mr. Weakley's claims are time-barred and Nashville Machine's motion for summary judgment should be granted.

## B. Mr. Weakley's Retaliation Claim is Without Merit[7]

Even in the absence of the foregoing statute of limitations defense, Mr. Weakley's claims would still fail because Mr. Weakley's substantive claims are meritless. Mr. Weakley alleges that he was retaliated against because of his testimony in the Robert Cervantes trial. [Weakley Dep. at 58:15-17, 58:21-23, 60:6-18]. Mr. Weakley argues that Nashville Machine's alleged retaliatory acts (including its alleged retaliatory harassment) were his disciplinary action in August 2011 and his termination in September 2011. [Weakley Dep. at 59:6-9, 60:6-18, 61:7-12]. In support of his claims for retaliation and retaliatory harassment, Mr. Weakley alleges that other employees have made mistakes, and to his knowledge, have not been disciplined or terminated. [Weakley Dep. at 58:3-11].

To establish a *prima facie* case of Title VII retaliation, Mr. Weakley must prove: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to Nashville Machine; (3) Nashville Machine thereafter took an adverse employment action against him, or he was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4)

---

[7] While Mr. Weakley's Complaint appeared on its face to assert claims for both retaliation and discriminatory harassment, Mr. Weakley's deposition clarified that his harassment claim is based on the same facts as his claim for retaliation. Specifically, Mr. Weakley testified "My harassment was brought on, I believe, because of retaliation from testifying on Bobby [C]ervantes' case…..")]. [Weakley Dep. at 58:15-16, 58:21-23]. When questioned in what ways he was harassed, Mr. Weakley testified his disciplinary action in August of 2011 and his termination in September 2011. [Weakley Dep. at 59:6-9]. As a result, Mr. Weakley's harassment claim is really a claim for "retaliatory harassment," which falls under *prima facie* case of retaliation under Title VII. *See Fuhr v. Hazel Park School Dist.,* 710 F.3d 668, 674 (6th Cir. 2013).

N MMS01 985295 v2
2900853-000038  10/21/2013

there was a causal connection between the protected activity and the adverse employment action or harassment. *Fuhr*, 710 F.3d at 674 (citations omitted). If Mr. Weakley establishes a *prima facie* case, Nashville Machine then has the burden of production and must articulate a legitimate, non-discriminatory reason for its actions. *Id*. If Nashville Machine produces a legitimate reason, then the burden of production returns to Mr. Weakley to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination. *Id.* at 675.

Furthermore, the United States Supreme Court recently clarified that a Title VII plaintiff must demonstrate "but-for" causation to sustain a retaliation claim. *University of Texas Southwestern Medical Center v. Nassar,* 133 S.Ct. 2517, 2534 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 2533.

### 1. Mr. Weakley is Unable to Prove a Causal Connection Existed Between his Testimony in the Cervantes Lawsuit and the Adverse Employment Actions

Mr. Weakley has not offered any evidence of a causal connection between his protected activity (*i.e.* his testimony in the Cervantes lawsuit, which concluded May 2011) and the alleged adverse employment actions (*i.e.* his probation in August 2011 and his employment termination in September 2011). In an effort to show a "causal connection," Mr. Weakley argues that other employees made mistakes in the past and were not reprimanded. [Weakley Dep. at 58:3-11]. Mr. Weakley is unable to offer any evidence of an employee who did not testify during the Cervantes lawsuit, but who committed similar errors in "type and severity" and was not placed on probation and then later terminated. *Clayton v. Meijer, Inc.,* 281 F.3d 605, 611 (6th Cir. 2002) (holding that in order to be similarly situated, the conduct at issue must be similar in type and severity").

16

Mr. Weakley also has not identified any employee who misaligned an elevator door frame and failed to notify his supervisor. [*See* Weakley Dep. at 73:15-22; *see* Exhibit 1 to Weakley Dep., number 4]. Likewise, Mr. Weakley has not identified any individual who was on probation, installed a damaged elevator door frame, and was not terminated. [*See* Weakley Dep. at 74:25-75:5; *see* Exhibit 1 to Weakley Dep., number 4]. Instead, Mr. Weakley makes unsubstantiated, and in some instances wholly inaccurate, accusations against Nashville Machine employees that are insufficient to prove a causal connection. [*See* Weakley Dep. at 69:4-19, 79:23-80:1, 80:2-4, 82:19-20].

Additionally, Alan Hazelwood and Clint Shanes, who are the only individuals Mr. Weakley alleges were performing similar work as himself, are not proper comparators. First, the decision-maker in Mr. Weakley's case, Mr. Chitty, was not the General Manager during either of those two incidents. [Chitty Dep. at 71:14-16, Chitty Decl. ¶ 21, 27]. Further, Mr. Weakley's allegations are inaccurate, and the situations at issue are not comparable. Mr. Hazelwood was working with an elevator that had an offset that neither Mr. Hazelwood nor Nashville Machine had worked with previously. [Chitty Decl. ¶ 22; *see also* Chitty Dep. at 135:17-23]. As a result, some of Mr. Hazelwood's elevator door frames were set in the wrong position. [Chitty Decl. ¶ 23; *see also* Chitty Dep. at 135:17-23]. Mr. Hazelwood noticed the offset in the field and ***immediately*** notified his supervisor. [Chitty Dep. at 135:17-136:5; Chitty Decl. ¶ 24]. The misalignment was corrected before the rest of the door frames were set. [Chitty Dep. at 135:17-136:5; Chitty Decl. ¶ 25].

Additionally, Mr. Shanes did not set frames incorrectly on the Nissan project. [Chitty Dep. at 74:11-17; Chitty Decl. ¶ 26]. Mr. Chitty was Project Manager and oversaw the elevator installation. [Chitty Decl. ¶ 27]. There were no issues with the door frame installation on the

17

Nissan project. [Chitty Decl. ¶ 28]. Mr. Weakley has failed to present any evidence that other employees made the mistakes of the type and severity he made without being disciplined.

It is clear from this discussion that Mr. Weakley has failed to furnish any evidence that he would not have been placed on probation and subsequently terminated had he not testified in the Cervantes lawsuit. *See Nassar*, 133 S.Ct. at 2533.

### 2. Nashville Machine's Legitimate Reason and the Absence of any Evidence of Pretext

Mr. Weakley has not met his burden of establishing a *prima facie* case of retaliation or retaliatory harassment. Accordingly, the Court's inquiry should end here. However, even if the Court were to somehow find that Mr. Weakley has established a *prima face* case of retaliation, Mr. Weakley cannot demonstrate that the reasons articulated by Nashville Machine for placing him on probation and terminating him were pretextual.

To raise a genuine issue of material fact as to the validity of an employer's explanation for an adverse employment action, the plaintiff must show (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action. *Parker v. Zale Corp.*, 864 F.Supp.2d 670, 681 (E.D. Tenn. 2012) (citing *Kocsis v. Multi–Care Mgmt., Inc*., 97 F.3d 876, 883 (6th Cir. 1996)). Further, the plaintiff "must produce sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendants intentionally discriminated against [her]." *Parker*, 864 F.Supp.2d at 681 (citing *Braithwaite v. Timken*, 258 F.3d 488, 493 (6th Cir. 2001)). The burden of persuasion remains at all times with the plaintiff. *Parker*, 864 F.Supp.2d at 681 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

18

Mr. Weakley is unable to show that Nashville Machine's articulated reason for his probation and subsequent termination was a pretext for retaliation. Mr. Weakley was aware of his performance deficiencies. Specifically, Mr. Weakley was placed on probation for misaligning an elevator door frame and failing to notify his supervisor. [Weakley Dep. at 24:12-12; Chitty Decl. ¶ 13]. Mr. Weakley does not dispute that the elevator door frame was misaligned. [Weakley Dep. at 24:12-14]. Mr. Weakly met with Mr. Chitty and Mr. Shultz to discuss his probation, and he was told that any further incidents would result in termination of his employment. [Weakley Dep. at 22:25-23:2, 30:25-31-3; see Exhibit 4 to Weakley Dep.]. Mr. Weakley was provided a formal write-up of his disciplinary action. [Weakley Dep. at 24:15-20; Exhibit 4 to Weakley Dep.]. The write-up expressly stated that if he had any questions or concerns regarding his probation, he should contact Mr. Chitty. [Weakley Dep. at 24:15-20; Exhibit 4 to Weakley Dep.]. Mr. Weakley made no effort to contact Mr. Chitty or file a grievance with the Union. [Weakley Dep. at 31:8-11, 31:17-21]. Mr. Chitty believed at the time, and continues to believe, that Mr. Weakley knew about the misalignment and failed to notify his supervisor. [Chitty Decl. ¶ 9].

Shortly thereafter, during his probationary period, there was damage caused to another elevator door frame that Mr. Weakley installed. [Weakley Dep. at 38:13-15]. Mr. Weakley does not dispute that the elevator door frame was damaged. [Weakley Dep. 38-5:15]. Further, Mr. Weakley did not notify his supervisor of the damage. [Weakley Dep. at 37:13-22; 38:13-15; Chitty Decl. ¶ 15]. Mr. Chitty believed at the time, and continues to believe, that Mr. Weakley knew that the elevator door frame was damaged when it was installed. [Chitty Decl. ¶ 17]. In light of Mr. Weakley's violation of his probation, Mr. Chitty made the decision to terminate his employment. [Chitty Dep. at 133:17-134:2; Chitty Decl. ¶ 4]. Mr. Weakley is unable to prove that Nashville Machine's alleged retaliatory animus was the "but-for" cause of his probation in

19

August 2011 or his termination in September 2011.  *See Nassar,* 133 S.Ct. at 2528.

Further, Mr. Weakley is unable to establish pretext in light of the record, which directly contradicts such an assertion.  Specifically, Mr. Weakley admits that he was not employed by Nashville Machine during his testimony in the Cervantes lawsuit.  [Weakley Dep. at 19:13-16, 62:17-20, 64:4-13; Exhibit 1 to Weakley Dep. q. 8].  In fact, Nashville Machine re-hired Mr. Weakley following his testimony.  [Weakley Dep. at 65:3-7].  At the time Mr. Weakley was re-hired, there were at least two other eligible Mechanics on the Union's list that Nashville Machine could have re-hired instead of Mr. Weakley.  [Chitty Dep. at 136:6-137:10; Weakley Dep. at 66:10-14, 67:25-68:3].  Mr. Chitty chose to rehire Mr. Weakley, and Mr. Weakley was the only Mechanic that Nashville Machine brought back to work on July 12, 2011.  [Chitty Dep. at 137:7-10; Exhibit 10 to Chitty Dep. numbered NMEC 0136].

Mr. Weakley has not and cannot offer evidence showing that Nashville Machine's legitimate, non-retaliatory reason for his probation and subsequent termination was pretextual or that Nashville Machine's desire to retaliate was the "but-for" cause of the alleged adverse employment actions.

## IV.    CONCLUSION

WHEREFORE, Nashville Machine submits that there is no genuine issue as to any material fact, and that it is entitled to a judgment as a matter of law on Mr. Weakley's claims. Nashville Machine requests, therefore, that the Court grant its Motion for Summary Judgment and enter an Order dismissing all of Mr. Weakley's claims with prejudice.

N MMS01 985295 v2
2900853-000038  10/21/2013

Respectfully submitted,

s/ Lawrence S. Eastwood, Jr.
Lawrence S. Eastwood, Jr., BPR No. 017801
Megan M. Sutton, BPR No. 029419
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, Tennessee 37201
Telephone: (615) 726-5600
Facsimile: (615) 744-5767

*Attorneys for Defendant Nashville*
*Machine Elevator Company, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 21st day of October 2013 the foregoing *Memorandum in Support of Defendant's Motion for Summary Judgment* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by Regular U.S. Mail. Parties may access this filing through the Court's electronic filing system:

Andy L. Allman
R. Patrick Parker
103 Bluegrass Commons Blvd.
Hendersonville, TN 37075

Attorneys for Plaintiff

s/ Lawrence S. Eastwood, Jr.
Lawrence S. Eastwood, Jr.

21